## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BERNARDO FRYE**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 12-2685-SS**

**SHERIFF MARLIN GUSMAN, ET AL.**

## ORDER AND REASONS

Plaintiff, Bernado Frye, filed this civil action pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman and Dr. Samuel Gore. In this lawsuit, plaintiff claims that he was denied adequate medical care for a fractured hand while incarcerated within the Orleans Parish Prison system. Specifically, he states his claim as follows:

> On or about March 23, 2012, I was arrested and confined in Orleans Parish Prison with no personal injuries. On or about March 25, 2012, as I was exiting my bed, I slipped and fractured my left hand. At time I didn't know of fracture but I endured a lot of pain. I filled out various sick call forms and grievances pertaining to the pain and injury. Finally after so many sick calls I saw a nurse practitioner and I was placed on list to receive an x-ray. On or about May 24, 2012, several x-rays of my hand and wrist were taken. On or about July 11, 2012, I was finally transported to University Medical Center for further treatment. There I received a full arm cast. For about 4 mos. I endured a lot of pain and suffering, without being treated.[1]

The defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiff was ordered to file an opposition to that motion by July 31,

---

[1] Rec. Doc. 1, pp. 4-5.

[2] Rec. Doc. 22.

2013;[3] however, no such opposition was filed.[4]  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[5]

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's

---

[3] Rec. Doc. 24.

[4] Plaintiff instead filed a motion for appointment of counsel, Rec. Doc. 26, which was denied, Rec. Doc. 27.

[5] Rec. Doc. 18.

2

opposition to summary judgment; rather,  "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

The defendants first argue that plaintiff has failed to state a proper official-capacity claim against them.  They are correct.  "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, an official-capacity claim against the defendants would in reality be a claim against the local governmental entity they serve. However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.  To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted).  Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must *identify* the policy or custom which

allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.

In the instant case, plaintiff does not even allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom.  Accordingly, he has failed to state a proper official-capacity claim against the defendants.

The defendants next argue that plaintiff has failed to state a proper individual-capacity claim against them.  Again, they are correct.  "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims."  Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  Here, plaintiff neither makes any factual allegations against the defendants nor alleges that they were in any way personally involved in the events giving rise to plaintiff's claims.  Although Sheriff Gusman is the head of the prison system and Dr. Gore is the head of the jail's medical department, they cannot be held vicariously liable for the actions of their subordinates pursuant to 42 U.S.C. § 1983.  Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

Lastly, even if Sheriff Gusman and Dr. Gore were otherwise proper defendants, the claims against them would still fail because plaintiff's underlying claim has no merit for the following reasons.

As noted, plaintiff is alleging that he was not provided with adequate medical care for a fractured hand. However, it is important to note that an inmate's constitutional right to medical care is extremely limited. Indeed, the federal constitutional rights of an incarcerated person, regardless of whether he is a pretrial detainee or a convicted prisoner, are violated *only* if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).[6] The United States Fifth Circuit Court of Appeals has observed:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

---

[6] The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Defendants do not dispute that plaintiff's medical needs were serious.

As defendants correctly argue, plaintiff's allegations of deliberate indifference are clearly rebutted by his medical records.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").  Those records, which have been filed into this federal record, include the following documents regarding plaintiff's hand injury:

- On April 18, 2012, plaintiff submitted a grievance requesting medical treatment for "some discomforts."  On May 1, 2012, he received a response stating:  "If you are seeking medical care, you must complete a sick call request form and provide it to the nurse for triage."[7]

- On May 2, 2012, plaintiff submitted another grievance complaining that he had not received medical care.  On May 10, 2012, he received a response stating:  "Your sick call request was triaged by the nurse and you are currently waiting to see a medical provider."[8]

- While that grievance was still pending, plaintiff submitted another grievance on May 9, 2012, complaining that he had not received medical care.  On May 14, 2012, he received a response stating: "Your sick call request was triaged by the nurse and you are currently waiting to see a medical provider.  Please

---

[7] Rec. Doc. 19-1, pp. 3-4.

[8] Rec. Doc. 19-1, pp. 5-6.

remember a sick call request form is the appropriate mechanism to access medical care."[9]

- On May 17, 2012, plaintiff was seen in the medical department, prescribed Ibuprofen, treated for various conditions, and an x-ray was ordered for his hand.[10]  That x-ray was subsequently taken and revealed a fractured wrist.[11]

- On June 1, 2012, plaintiff was seen in the medical department, received treatment for various conditions, and was referred to an orthopedic specialist.[12]

- On June 12, 2012, plaintiff submitted a sick call request, stating:  "I have a fractured wrist, and I'm in a lot of pain.  Can you please treat me for the pain."  On that same date, the nurse responded that plaintiff already had a pending sick call for his wrist fracture and that no apparent distress was noted.[13]

- On June 20, 2012, plaintiff submitted a sick call request, stating:  "I have a fractured wrist.  I'm in a lot of pain and I need medical treatment.  It is

---

[9] Rec. Doc. 19-1, pp. 9-10.

[10] Rec. Doc. 19-1, p. 113.

[11] Rec. Doc. 19-1, pp. 114-15.

[12] Rec. Doc. 19-1, p. 112.

[13] Rec. Doc. 19-1, p. 95.

already in my file."  On that same date, the nurse responded that plaintiff already had a sick call follow-up and an orthopedics follow-up pending.[14]

- On July 6, 2012, plaintiff submitted a grievance, stating:  "I have a fractured wrist in which I am in constant pain and have yet to receive treatment since 4-12."  On that same date, he was seen in the medical department, prescribed pain relievers, and referred to an orthopedic specialist.[15]  On July 23, 2012, he then received a response to his grievance stating:  "Note that you did not disclose any medical problems during your initial medical screening completed upon being booked into this facility.  It was due to your completion of a sick call request form that you were triaged by the nurse and referred to see a medical provider.  After your clinical encounter with the provider, medications and X rays test were ordered.  Also note that you were referred to see the specialist at MCLNO, and seen by the specialist. Currently, you have a follow-up appointment scheduled.  Should you need medical care again before is due, please complete a sick call request form and provide it to the nurse for triage."[16]

- While the foregoing grievance was pending, plaintiff was indeed seen at the LSU orthopedic department on July 11, 2012.  His hand and arm were placed

---

[14] Rec. Doc. 19-1, p. 94.

[15] Rec. Doc. 19-1, p. 111.

[16] Rec. Doc. 19-1, pp. 29-30.

in a cast, it was recommended that he be prescribed Tramadol and Tylenol to relieve pain, and he was advised to return for further x-rays and evaluation in three weeks.[17]   On that same date, he was also seen in the jail medical department, and he was prescribed Tramadol and Tylenol as recommended.[18]

• The following day, July 12, 2012, plaintiff submitted another grievance complaining about a lack of medical treatment.  While that grievance was pending, he was seen in the medical department on July 25, 2012, and prescribed a nonsteroidal anti-inflammatory drug (Indocin).[19]  Then, on August 6, 2012, he received a response to the grievance stating: "You have been evaluated and treated by MCLNO specialists and have a follow-up appointment scheduled and pending.  Should you need medical care again before is due, please complete a sick call request form."[20]

• While that grievance was still pending, plaintiff submitted a sick call request on August 1, 2012, stating: "This cast is bothering me.  Could you please readjust it?"  He was examined that same day by a nurse, who noted: "Full ROM [range of motion]. Capillary refill brisk.  NADN [no apparent distress

---

[17] Rec. Doc. 19-1, p. 118.

[18] Rec. Doc. 19-1, p. 110.

[19] Rec. Doc. 19-1, p. 109.

[20] Rec. Doc. 19-1, pp. 35-36.

noted]."   However, the nurse referred plaintiff to the jail physician for evaluation.[21]

- On September 6, 2012, plaintiff submitted a sick call request, stating:  "My hand still hurts, please re-evaluate my status.   When will the cast be removed?  What can I receive for the pain?"   He was examined that same day by a nurse, who noted:  "Cast to (L) hand/arm intact.  Full ROM noted to fingers.  No swelling noted.  Cap refills brisk.  No discoloration noted." It was also noted that he had medical appointments pending.[22]

- On September 12, 2012, plaintiff was again seen at the LSU orthopedic department, at which time his cast was apparently removed.[23]

- On September 19, 2012, plaintiff submitted a sick call request, stating:  "I need some pain meds (ultram) for my hand.  It was broken & I'm still in constant pain.  Something is not right – Every movement hurts – Hurts bad." He was examined that same day by a nurse, who noted: "NADN.  ↓ ROM + reports pain [with] movements.  Cast removed last week.  No swelling, redness, deformity, or discoloration.  CRT [capillary refill time] < 3 sec." Plaintiff was referred to the physician.[24]  He was seen that same day, again

---

[21] Rec. Doc. 19-1, p. 90.

[22] Rec. Doc. 19-1, p. 93.

[23] Rec. Doc. 19-1, p. 116.

[24] Rec. Doc. 19-1, p. 92.

prescribed Indocin, and it was noted that he had an appointment pending with an outside specialist.[25]

- On October 8, 2012, plaintiff submitted a sick call request, stating:  "I had a broken hand (left).  I was in a  cast for two months.  The cast is off, & I still fill [sic] sharp pains & my 'range of motion' is limited.  Something is wrong, & I hurt."  He was examined that same day by a nurse, who noted:  "NADN. AAO [awake, alert, and oriented] x 3. Pt [patient] is able to move left hand." She referred plaintiff to the jail physician.[26]  He was in fact seen on October 22 and again prescribed Tramadol and Tylenol.  It was also noted that he had an appointment pending with an outside specialist.[27]

- On November 7, 2012, plaintiff was released from jail.[28]

In light of the foregoing, it is apparent that jail officials did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition.  Far from ignoring plaintiff's condition or denying him care, they even arranged for him to receive evaluation and treatment from an outside specialist.

That, of course, is not to say that plaintiff's care was optimal or that all of his concerns were resolved to his satisfaction.  However, that simply was not required.  The fact that an inmate's

---

[25] Rec. Doc. 19-1, p. 108.

[26] Rec. Doc. 19-1, p. 91.

[27] Rec. Doc. 19-1, p. 107.

[28] See, e.g., Rec. Doc. 19-1, p. 65.

11

medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  Therefore, if an inmate in fact received medical treatment, federal constitutional protections were not violated just because that treatment was unsuccessful or because pain persisted despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).  Moreover, the federal constitution does not require even that an inmate's medical care have been free from negligence or medical malpractice.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

    The fact that plaintiff apparently believes that jail officials could have done more is of no moment.  Absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference.  Gobert, 463 F.3d at 346.  For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment."  Estelle, 429 U.S. at 107.  Generally, such matters of professional medical

judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); <u>Castro v. Louisiana</u>, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is simply no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*. As noted, it is evident here that there was no deliberate indifference. Because no genuine issue of material fact remains in dispute with respect to that issue, the defendants are entitled to judgment as a matter of law.

Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that the defendants' motion for summary judgment, Rec. Doc. 22, is **GRANTED** and that the claims against them are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this twentieth day of August, 2013.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

13